UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
UNITED STATES OF AMERICA,      )
                              )
                              )        CRIMINAL ACTION
            v.                 )        NO. 10-10008-WGY
                              )
RIGOBERTO RAMIREZ,             )
                              )
                  Defendant.   )
_____)

YOUNG, D.J.                                    May 24, 2016

**MEMORANDUM OF DECISION**

**I.    INTRODUCTION**

On February 25, 2016, this Court granted Rigoberto

Ramirez's ("Ramirez") motion to vacate his sentence under 28

U.S.C. § 2255, mandating his immediate release from custody.

Elec. Clerk's Notes, ECF No. 137.  This memorandum explains the

Court's reasoning in doing so.

**A.  Ramirez's Sentencing and Direct Appeal**

In 2011, Ramirez pled guilty to several drug-related

charges.  Elec. Clerk's Notes, ECF No. 41; see United States v.

Ramirez, 708 F.3d 295, 298 (2013) ("Ramirez I").  Based on the

algorithm established by the United States Sentencing Commission

Guidelines ("Guidelines"), the U.S. Probation Office's pre-

sentence report ("PSR") initially determined that Ramirez's

offense level was 15 and that his criminal history points placed

[1]

him in Criminal History Category V, resulting in a Guidelines sentencing range of 37 to 46 months.  Ramirez Pre-sentence Report ("PSR") 12, 29; Ramirez I, 708 F.3d at 298.  The U.S. Probation Office also determined that two of Ramirez's prior convictions qualified as "crime[s] of violence" under Guidelines Section 4B1.2(a), making Ramirez a "career offender" subject to a sentence enhancement under Section 4B1.1 of the Guidelines. PSR 12; Ramirez I, 708 F.3d at 299.  This designation necessarily bumped him up to Criminal History Category VI.  The PSR calculated Ramirez's career-offender total offense level to be 31, which, together with his Criminal History Category VI, led to a Guidelines range of 188 to 235 months.  PSR 12, 29, 44; U.S.S.G. § 4B1.2(a).  The Court adopted the PSR's Guidelines calculations and sentenced Ramirez to 156 months (13 years) in prison.  Tr. Disposition Rigoberto Ramirez 9:6-8, ECF No. 78; Elec. Clerk's Notes, ECF No. 71.

Ramirez appealed his sentence, arguing that one of his prior convictions did not qualify as a "crime of violence" under Section 4B1.2(a).[1]  Ramirez I, 708 F.3d at 300.  The First Circuit concluded that this Court had not erred in applying the

---

[1] Ramirez also argued at his sentencing hearing that the Guidelines' "residual clause" was void for vagueness; the First Circuit deemed Ramirez to have all "but abandon[ed]" this argument on appeal.  Ramirez I at 299, 307 n. 13.

career-offender enhancement, and that Ramirez qualified as
career offender solely under the career-offender "residual
clause" in Section 4B1.2(a)(2) of the Guidelines (the
"Guidelines' Residual Clause"). Id. at 307. The First Circuit,
however, remanded the case for resentencing on the basis that
the record was unclear with respect to this Court's imposition
of an unrelated sentence enhancement. Id. at 310.

At Ramirez's resentencing on April 29, 2013, the Court
determined Ramirez's career offender total offense level to be
29, which, coupled with his unchanged Criminal History Category
VI, resulted in a Guidelines range of 151 to 188 months. Order.
Am. J. ("Order") 1, 7, ECF No. 102. The Court amended the prior
judgment and resentenced Ramirez to 12 years (144 months), which
was below the career-offender-enhanced Guidelines range. Id. at
9. Ramirez appealed the amended judgment, first to the First
Circuit, which affirmed the Court's resentencing,[2] United States
v. Ramirez, No. 13-1585, slip op. (1st Cir. June 23, 2014)
("Ramirez II"), ECF No. 111, and then, to the Supreme Court,
Letter Supreme Court United States Clerk, ECF No. 113. The

---

[2] On appeal, Ramirez reasserted two main arguments in order
to preserve them for a Supreme Court appeal: that one of his
prior convictions did not qualify as "crime of violence" under
Section 4B1.2(a), and that the career-offender "residual
clause," Section 4B1.2(a)(2) of the Guidelines, was
unconstitutionally vague. Ramirez II at 1.

Supreme Court denied certiorari on October 20, 2014.  Ramirez v.
United States, 135 S.Ct. 424 (2014).

**B.   Developments After the Supreme Court Denied Certiorari**

The year after the Supreme Court denied Ramirez certiorari,
it decided Johnson v. United States, 135 S.Ct. 2551 (2015).  In
Johnson, the named defendant had been sentenced under the Armed
Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which imposes
sentencing enhancements on individuals convicted under 18 U.S.C.
§ 922(g) (felon in possession of a firearm).  See id. at 2556.
If an individual convicted under Section 922(g) has three or
more prior convictions for a "serious drug offense" or a
"violent felony," the ACCA increases his sentencing range from a
maximum of 10 years in prison, to a minimum of 15 years in
prison.  18 U.S.C. § 924(e)(1); Johnson, 135 S.Ct. at 2555.  The
ACCA defines "violent felony" as "any crime punishable by
imprisonment for a term exceeding one year" that "(i) has as an
element the use, attempted use, or threatened use of physical
force against the person of another; or (ii) is burglary, arson,
or extortion, involves use of explosives, or otherwise involves
conduct that presents a serious potential risk of physical
injury to another[.]"  18 U.S.C. § 924(e)(2)(B) (emphasis
added).  The underlined text is known as the "residual clause"
of the ACCA, Johnson, 135 S.Ct. at 2556, and is expressed in

[ 4 ]

haec verba as the Guidelines' career-offender residual clause. Ramirez I, 708 F.3d at 306; U.S.S.G. § 4B1.2(a)(2).

In Johnson, the Supreme Court concluded that the inquiry required to establish whether a certain offense fell under the ACCA's residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges."  135 S.Ct. at 2557. Prior judicial attempts that failed to craft a "principled and objective standard out of the residual clause" convinced the Supreme Court that "imposing an increased sentence under the residual clause of the [ACCA] violate[d] the Constitution's guarantee of due process."  Id. at 2558, 2563.

**C.   Ramirez's Section 2255 Petition**

Following Johnson, on August 24, 2015, Ramirez filed the current motion to vacate his sentence under 28 U.S.C. § 2255, arguing that the Supreme Court's invalidation of the ACCA residual clause requires the conclusion that the Guidelines' identically worded residual clause also violates due process, and that this conclusion ought retroactively apply to Ramirez's collateral attack on his sentencing.  Mot. Vacate, ECF No. 119; Addendum Supp. 28 U.S.C. § 2255 Mot. 2, ECF No. 120; Def.'s Reply Mem. Law Supp. Mot. § 2255 Vacate, Set Aside, Correct Sentence Person Federal Custody ("Def.'s Mem.") 3, ECF No. 134.

The government opposed Ramirez's petition.  Gov't's Supplemental Opp'n Def.'s Mot. Relief 28 U.S.C. § 2255 ("Gov't's

Opp'n") 2-4, ECF No. 131.  In its memorandum, the government

conceded that Johnson applies retroactively to cases involving

the ACCA, id. at 2, and that, under Johnson, the Guidelines'

Residual Clause is invalid, id. at 3.  It argued, nevertheless,

that "the application of Johnson to the Sentencing Guidelines'

residual clause produces procedural changes in the sentencing

process that are not retroactive on collateral review."  Id.

In the time since the parties filed their briefs and the

Court granted Ramirez's motion at the February 25, 2016,

hearing, the Supreme Court confirmed the retroactivity of

Johnson as applied to the ACCA in Welch v. United States, 136

S.Ct. 1257 (2016).  The retroactive application of Johnson to

the Guidelines' Residual Clause, however, has not yet been

addressed by the Supreme Court or any of the Courts of Appeal.

## II. ANALYSIS

This case presents the question whether the Supreme Court's

decision in Johnson ought apply retroactively to invalidate the

Guidelines' Residual Clause on collateral review of Ramirez's

sentence under 28 U.S.C. § 2255.[3]  Accordingly, the Court first

analyzes the merits of Ramirez's constitutional claim -- the due

process vagueness challenge to the Guidelines' Residual Clause -

---

[3] Neither party disputes that Ramirez's petition meets the
28 U.S.C. § 2255 jurisdictional requirements.

- although the parties agree that the Guidelines' Residual
Clause is unconstitutionally vague.  The Court then proceeds to
conduct the retroactivity analysis for Johnson, as applied to
the Guidelines, under the relevant framework for determining
retroactivity provided by the plurality opinion in Teague v.
Lane, 489 U.S. 288 (1989).  See Ferrara v. United States, 456
F.3d 278, 288 (1st Cir. 2006).[4]

**A.  Due Process**

Although the government conceded that the Guidelines'
Residual Clause is void for vagueness, the Court briefly
addresses the merits of this argument -- on which neither the
First Circuit nor the Supreme Court has yet spoken -- for the
purpose of "candidly explain[ing]" its reasoning.[5]  Robert E.
Keeton, Keeton on Judging in the American legal System 5 (1999).

---

[4] The Court acknowledges that it has held in the past that
Teague does not apply to Section 2255 petitions seeking review
of enhanced sentences.  United States v. Payne, 894 F.Supp. 534,
542 (D. Mass. 1995).  Since then, although Teague only analyzed
the federal collateral attack upon a state conviction, the First
Circuit has stated, without discussion, that the Teague
retroactivity framework constrains a federal prisoner's rights
under Section 2255.  Ferrara, 456 F.3d at 288.  In Welch, the
Supreme Court also conducted the Teague analysis for Johnson
under the assumption, embraced by the parties in that case, that
Teague applied.  Welch, 136 S.Ct. at 1264.  In light of existing
precedent, the Court will thus proceed under the same
assumption, unchallenged by either party, that Teague applies in
this case.

[5] The Court also takes this more prudent approach in light
of the government's penalty-free decision unilaterally to
rescind concessions made in previous cases.  See Gov't's Opp'n

Under the Guidelines, an offender is subject to an increased sentencing range if classified as a "career offender" as a result of having "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.  The Guidelines define "crime of violence" as an offense that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another</u>."  <u>Id.</u> § 4B1.2(a)(1)-(2) (emphasis added).  The underlined text is the Guidelines' Residual Clause.

In <u>Johnson</u>, the Supreme Court held that the identically worded residual clause of the ACCA was void for vagueness because it was "so vague it fail[ed] to give ordinary people fair notice of the conduct it punishe[d], or so standardless that it invite[d] arbitrary enforcement."  <u>Johnson</u>, 135 S.Ct. at 2556.  The Court observed that "the experience of the federal courts leaves no doubt about the unavoidable uncertainty and

---

19 n. 4 (stating that it no longer concedes that the ACCA-related rules announced in <u>Begay</u> v. <u>United States</u>, 553 U.S. 137 (2008) and <u>Chambers</u> v. <u>United States</u>, 555 U.S. 122 (2009) were also retroactive as applied to the Guidelines, and citing <u>United States</u> v. <u>Ogles</u>, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc) for the proposition that it is entitled to rescind previous concessions of law).

arbitrariness of adjudication under the residual clause[,]" id. at 2562, and referenced cases interpreting both the ACCA residual clause and the Guidelines' Residual Clause, id. at 2557, 2560 (collecting cases).  In the First Circuit, the two residual clauses have also been analyzed in tandem in the past. See Ramirez I, 708 F.3d at 306; United States v. Grupee, 682 F.3d 143, 148-49 (1st Cir. 2012); United States v. Giggey, 551 F.3d 27, 39 (1st Cir. 2008).

The Guidelines' advisory nature[6] does not render the Supreme Court's conclusion inapplicable to the residual clause contained therein.  Cf. Peugh v. United States, 133 S.Ct. 2072, 2084 (2013) (holding that the Guidelines are subject to the Ex Post Facto clause).  The Guidelines "remain the starting point for a district court's decision,"[7] Giggey, 551 F.3d at 29, and district

---

[6] The Guidelines became advisory in 2005 when the Supreme Court held that the then-mandatory Guidelines violated the Sixth Amendment because they permitted judges to impose sentences above "the maximum authorized by the facts established by a plea of guilt or a jury verdict." United States v. Booker, 543 U.S. 220, 244 (2005).  To remedy this violation, the Supreme Court struck certain portions that made the Guidelines mandatory. Id. at 245-258.  After Booker, a district court is no longer bound by the Guidelines sentencing range but has to consider all the factors enumerated in 18 U.S.C. § 3553(a) "to guide its discretion at sentencing." Peugh, 133 S.Ct. at 2080.

[7] Before deciding on a sentence, a district court judge receives input from both parties as well as a pre-sentencing report from a probation officer. United States v. Serrano-Mercado, 784 F.3d 838, 839 (1st Cir. 2015).  The judge must also consider the factors set forth in 18 U.S.C. § 3553 (a), Peugh, 133 S.Ct. at 2080, and may consider deviations from the

courts are to justify major departures, see Peugh, 133 S.Ct. at 2080; United States v. Ortiz-Rodriguez, 789 F.3d 15, 19 (1st Cir. 2015).[8]

Moreover, whether or not the eventual sentence falls within or outside the Guidelines range, the classification as career offender has a meaningful impact on the offender's ultimate sentence.  See Federal Defender's Office, Average Sentences of Drug Trafficking Offenders (Career Offender and Non-career Offender) FY 2005-2014, https://www.fd.org/docs/select-topics/sentencing-resources/average-sentences-of-drug-offenders-and-robbery-offenders-(career-offender-and-non-career-offender)----fy-2005-2014.pdf?sfvrsn=4 (last visited May 19, 2016).  Data

---

Guidelines that are not derived from Section 3553 and that contravene "broad policy pronouncement[s] of the Sentencing Commission," United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).  A district court "may not presume that the Guidelines range is reasonable," Peugh, 133 S.Ct. at 2080(quoting Gall v. United States, 552 U.S. 38, 50 (2007)), and must explain on the record the basis for a "chosen sentence," id.

[8] The appellate process also cabins a judge's discretion vis-à-vis the Guidelines.  A district court's sentencing decision is reviewed for unreasonableness under an abuse of discretion standard.  Gall, 552 U.S. at 51; United States v. Quinones-Melendez, 791 F.3d 201, 204 (1st Cir. 2015).  An appellate court "may, but is not required to presume that a within-Guidelines sentence is reasonable" and "may not apply a heightened standard of review or a presumption of unreasonableness to sentences outside the Guidelines range[.]" Peugh, 133 S.Ct. at 2080.  "'[A] district court's decision to vary from the advisory Guidelines may attract the greatest respect when' it is based on the particular facts of a case." Id. (quoting Kimbrough, 552 U.S. at 109).

show that the difference between the average sentences for career offenders versus non-career offenders is around 100 months.  See id.

Although the Guidelines' advisory nature means that a criminal defendant has no "expectation subject to due process protection . . . that [he will] receive a sentence within the presumptively applicable Guidelines range[,]" Irizarry v. United States, 553 U.S. 708, 713 (2008), the Guidelines' continued role as "basis," Peugh, 133 S.Ct. at 2083, for a defendant's ultimate sentence preserves his due process expectation that his sentence-enhancing classification as a career offender will not be subject to the "unavoidable uncertainty and arbitrariness of adjudication under the residual clause," Johnson, 135 S.Ct. at 2562.  Indeed, the invocation of "so shapeless a provision" as the residual clause to sentence a defendant to a significantly higher sentence, id. at 2560, violates due process.[9]

---

[9] The Court is not alone in concluding that the Guidelines' Residual Clause is unconstitutionally vague.  Since Johnson, with one exception, the Circuit courts that have reached the issue have concluded that the Guidelines' Residual Clause is unconstitutional.  See United States v. Welch, No. 12-4402-CR L, 2016 WL 536656, at *4 (2d Cir. Feb. 11, 2016); United States v. Townsend, No. 14-3652, 2015 WL 9311394, at *4 (3d Cir. Dec. 23, 2015); United States v. Madrid, 805 F.3d 1204, 1211 (10th Cir. 2015) ("it stretches credulity to say that we can apply the residual clause of the Guidelines in a way that is constitutional, when courts cannot do so in the context of the ACCA"); United States v. Darden, 605 F.App'x 545, 546 (6th Cir. 2015).  But see United States v. Lee, No. 13-10517, 2016 WL 2638364, at *10 (9th Cir. May 6, 2016); United States v.

B.   **Teague** Analysis

According to Teague, "new constitutional rules of criminal procedure [are not] applicable to those cases which have become final before the new rules [were] announced."  489 U.S. at 310. "[S]ubstantive rules," however, are not subject to the Teague retroactivity bar.[10]  See id. at 307; Schriro v. Summerlin, 542 U.S. 348, 351 (2004).

This section first discusses whether the rule at issue here -- i.e., the invalidation of the Guidelines' Residual Clause pursuant to Johnson -- constitutes a "new" rule, for the purpose

---

Matchett, 802 F.3d 1185, 1195-96 (11th Cir. 2015) (Guidelines cannot be challenged for vagueness).

Moreover, other Circuits, including the First Circuit, have questioned whether the Guidelines' Residual Clause remains constitutional after Johnson, or have adopted the government's concession that the Guidelines' Residual Clause was unconstitutional.  See United States v. Soto-Rivera, 811 F.3d 53, 59 (1st Cir. 2016) (conducting a career offender analysis without relying on the residual clause because the government had conceded that Johnson's reasoning applied to the Guidelines); United States v. Taylor, 803 F.3d 931, 933 (8th Cir. 2015) (remanding to the district court to decide whether the career offender residual clause is unconstitutionally vague because precedent reasoning that Guidelines cannot be challenged for vagueness doubtful after Johnson); United States v. Castro-Vasquez, 802 F.3d 28, 38 (1st Cir. 2015) ("Intervening authority has called the residual clause in question."); Ramirez v. United States, 799 F.3d 845, 856 (7th Cir. 2015)(assuming that the Guidelines are unconstitutionally vague although neither party had briefed the issue).

[10] There is another exception: "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." Saffle v. Parks, 494 U.S. 484, 495 (1990) (quoting Teague, 489 U.S. at 311-12).  It is not relevant here.

of Teague.   Upon concluding that it is a new rule, the Court

then turns to the question of whether it qualifies as a

"substantive rule" applicable retroactively in this case.

### 1.   New Rule

A case announces a new rule "when it breaks new ground or

imposes a new obligation[,]" or, in other words, "if the result

was not dictated by precedent existing at the time the

defendant's conviction became final."[11]   Teague, 489 U.S. at 301;

see also Chaidez v. United States, 133 S.Ct. 1103, 1107 (2013)

(a holding is not dictated by existing precedent "unless it

---

[11] The purpose of construing the "new rule" concept somewhat
narrowly and limiting the retroactive application of new rules
on collateral review stems from the deterrent purpose of the
habeas writ.   See Saffle, 494 U.S. at 488.   As the Supreme Court
explained in Saffle:

> Foremost among [the underlying purposes of the habeas
> writ] is ensuring that . . . courts conduct criminal
> proceedings in accordance with the Constitution
> interpreted at the time of the proceedings.   The
> threat of habeas serves as a necessary additional
> incentive for trial and appellate courts throughout
> the land to conduct their proceedings in a manner
> consistent with established constitutional standards.
> In order to perform this deterrence function, the
> habeas court need only apply the constitutional
> standards that prevailed at the time the original
> proceedings took place.   The 'new rule' principle
> therefore validates reasonable, good-faith
> interpretations of existing precedents made by . . .
> courts even though they are shown to be contrary to
> later decisions.

Id. (internal quotation marks, citations, and alterations
omitted).

would have been apparent to all reasonable jurists") (internal citation and quotation marks omitted).  Overruling existing precedent is sufficient to render a rule new, see Saffle v. Parks, 494 U.S. 484, 488 (1990), though not necessary, see Stringer v. Black, 503 U.S. 222, 228 ("[G]ranting the relief sought would create a new rule [where] the prior decision is applied in a novel setting, thereby extending the precedent.").

Niether party disputes that holding the Guidelines' Residual Clause unconstitutionally vague would announce a "new rule," though they differ in their framing of this issue. Compare Gov't's Opp'n 4 ("in order to grant collateral relief in a guidelines case based on Johnson, the Court would have to announce or apply two new rules that were not established before Johnson: that the guidelines' residual clause is unconstitutionally vague, and that due process vagueness principles apply to the sentencing guidelines."), with Def.'s Mem. 8-9 (arguing that the new rule announced in Johnson is the only rule the Court would have to apply to invalidate the Guidelines' Residual Clause as unconstitutionally vague).

In the Court's view, each party's approach is flawed.  The ultimate question here is whether the Court could give Ramirez and all other similarly situated defendants the benefit of the rule that the Guidelines residual clause is unconstitutionally vague.  Splitting the rule in two, as the government urges,

would create a procedural quagmire that would not serve the

purpose of the Teague retroactivity framework.[12]   At the same

time, categorically applying the Johnson rule to the Guidelines,

as Ramirez urges, would not fairly account for the more involved

_____

[12] Federal courts usually grapple with the question of
whether a new constitutional rule is retroactive in two
contexts: 1) the Supreme Court announces a new rule on direct
review of a criminal defendant's petition and another criminal
defendant, whose conviction became final before the new rule was
announced, later petitions to have the new rule applied in his
case, see, e.g., Montgomery v. Louisiana, 136 S.Ct. 718 (2016)
(prohibition of mandatory life without parole for juvenile
offenders is retroactive); Butterworth v. United States, 775
F.3d 459 (1st Cir. 2015), cert. denied, 135 S.Ct. 1517 (2015) (a
rule that any fact leading to the imposition of a mandatory
minimum sentence must be found by a jury beyond a reasonable
doubt is not retroactive); 2) a petitioner asks a federal court
to extend an old rule (i.e., a Supreme Court decision that
precedes the time when the petitioner's conviction became
final), see Teague, 489 U.S. at 209 (the criminal defendant had
petitioned for, among other things, the extension of a Supreme
Court precedent).

The unusual debate about whether the Court must apply one
versus two new rules stems from the posture of this case: the
Court is asked to "extend" in a novel way and not simply apply
(at least according to the government) the (new) ruling of a
case decided by the Supreme Court after Ramirez's conviction
became final.   This difference in context is, however,
immaterial to the retroactivity analysis.   The retroactivity
framework in Teague was not a question of context but one of
purpose: establishing whether, in a collateral attack, it would
be equitable to adopt the "new rule urged by petitioner [in a
certain] case" and "give petitioner the benefit of that new rule
even though it would not be applied retroactively to others
similarly situated."   Teague, 489 U.S. at 315.   The plurality
decided that the rule urged by the petitioner there did not fall
under either of the two exceptions to the retroactivity bar, id.
at 314-15, and "refuse[d] to announce a new rule in a given case
unless the rule would be applied retroactively to the defendant
in the case and to all others similarly situated[,]" id. at 316.

analysis necessary to support the retroactivity of the
Guidelines' Residual Clause vagueness rule, which is not a
perfunctory application of Johnson.[13]

In reality, the "new rule" question can be rather simply
resolved.  Application of Johnson to the Guidelines' Residual
Clause constitutes a new rule.  Johnson itself -- which was
decided after Ramirez's conviction became final -- overruled
prior Supreme Court decisions, 135 S.Ct. at 2563, and thus
announced a new rule, see Welch, 136 S.Ct. at 1265.  To hold
that the Guidelines' Residual Clause is void for vagueness on

---

[13] The Court acknowledges that opinions from the Seventh
Circuit note that the Johnson rule is categorically applicable
to the Guidelines.  See, e.g., Stork v. United States, No. 15-
2687, 2015 WL 5915990, at 1* (7th Cir. Aug. 13, 2015)
(authorizing a second or successive Section 2255 motion to
vacate a career offender sentence "[b]ecause Johnson announced a
new substantive rule of constitutional law made categorically
retroactive to cases on collateral review by the Supreme
Court").  The First Circuit, however, has recently denied the
authorization of such second or successive Section 2255 motions.
See Ahern v. United States, No. 15-2176 (1st. Cir. May 4, 2016);
Turner v. United States, No. 16-1145 (1st. Cir. May 4, 2016)
(summarily denying the petition for the reasons stated by the
government in its opposition to this successive Section 2255
motion).  Second or successive Section 2255 motions face the
added hurdle that a petitioner may only invoke the application
of a new rule to his case if the Supreme Court has already "made
retroactive" this new rule to cases on collateral review.  28
U.S.C. § 2255(h)(2).  This requirement has been interpreted as
requiring the Supreme Court, and no other lower court, to have
already "declared" the retroactivity of the new rule.  See
Cuevas v. Derosa, 386 F.3d 367, 368 (1st Cir. 2004).  Thus, the
First Circuit's post-Welch denial of these Section 2255
petitions suggests that it does not subscribe to the categorical
approach to Johnson's retroactive application to the Guidelines.

the basis of Johnson, then, would be to announce a new
constitutional rule and not merely to apply the "constitutional
standards that prevailed" at the time Ramirez's conviction
became final.  Teague, 489 U.S. at 306.  The new rule at issue,
then -- consistent with the above analysis and the Court's
rejection of each party's more extreme approach -- is the
application of Johnson's vagueness holding to invalidate the
Guidelines' Residual Clause.

### 2.  Retroactivity

     Having defined the new rule at issue, the Court must decide
whether it applies to Ramirez.  To do so, it must determine if
it is retroactive under Teague.

     Teague's retroactivity framework "is founded on the notion
that one of the 'principal functions of habeas corpus [is] to
assure that no man has been incarcerated under a procedure which
creates an impermissibly large risk that the innocent will be
convicted.'"  Bousley v. United States, 523 U.S. 614, 620 (1998)
(quoting Teague, 489 U.S. at 312) (additional internal citation
and quotation marks omitted).  Through Teague and its progeny,
the Supreme Court sketched the boundary separating rules that
must apply retroactively in order to avoid such an
"impermissibly large risk," from those rules that need not have
retroactive application to ensure that habeas corpus serves its

main purpose.  "Substantive rules" comprise the former category,
while "procedural rules" fall into the latter.[14]

Procedural rules are those "designed to enhance the
accuracy of a conviction or sentence by regulating 'the manner
of determining the defendant's culpability.'"  Montgomery v.
Louisiana, 136 S.Ct. 718, 730 (quoting Schriro, 542 U.S. at 353;
Teague, 489 U.S. at 313).  Such rules may, for example,
"'allocate decisionmaking authority' between judge and jury . .
. or regulate the evidence that the court could consider in
making its decision."  Welch, 136 S.Ct. at 1265 (quoting
Schriro, 542 U.S. at 353).  Again, these rules do not apply
retroactively.  Bousley, 523 U.S. at 620.

Substantive rules, on the other hand, "set forth
categorical constitutional guarantees that place certain
criminal laws and punishments beyond the State's power to
impose."  Montgomery, 136 S.Ct. at 729.  They include, for
example, "rules forbidding criminal punishment of certain
primary conduct" and "rules prohibiting a certain category of
punishment for a class of defendants because of their status or
offense."  Penry v. Lynaugh, 492 U.S. 302, 330 (1989), abrogated
on other grounds by Atkins v. Virginia, 536 U.S. 304 (2002).

---

[14] The exception to this rule is discussed above, see supra
note 10, and is not relevant here.

These rules apply retroactively "because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him."  Schriro, 542 U.S. at 352 (internal quotation marks and citation omitted).

The government argues that while Johnson announced a substantive rule, the application of that rule to the Guidelines' Residual Clause is procedural, and thus non-retroactive, as it merely alters the range of appropriate sentences under the advisory Guidelines and does not render Ramirez's sentence unlawful.[15]  See Def.'s Opp'n 12-19.  Ramirez,

---

[15] In arguing that Johnson, as applied to the Guidelines, is procedural, the government relies on a line of cases from other Circuits that address non-constitutional claims for relief raised via Section 2255 motions.  Gov't.'s Opp'n 14; see Sun Bear v. United States, 644 F.3d 700, 705 (8th Cir. 2011); United States v. Foote, 784 F.3d 931, 939 (4th Cir. 2015) (collecting cases and concluding that there is no longer any Circuit decision "whereby a challenge to one's change in career offender status, originally determined correctly under the advisory Guidelines, is cognizable on collateral review").  These decisions and the cases referenced in these decisions, however, addressed a petitioner's non-constitutional claims brought under Section 2255 on the basis that the sentence had been "in excess of the maximum authorized by law, or [was] otherwise subject to collateral attack[.]"  28 U.S.C. § 2255.  Such claims are subject to the miscarriage of justice cognizability standard.  Foote, 784 F.3d at 936; see generally Kirby J. Sabra, Note, Miscarriage of Justice: Post-Booker Collateral Review of Erroneous Career Offender Sentence Enhancements, 96 B.U. L. Rev. 261 (2016); Ashley P. Leavitt, Federal Sentencing Post Johnson and Welch: The "Nuclear Explosion" of Federal Sentencing Reform 30 (on file with the Court) (noting the "glaring contrast" between calling Johnson as-applied to the Guidelines "procedural" under Teague when Gall mandates that "district

meanwhile, argues that Johnson is "categorically retroactive," Def.'s Mem. 6 (quoting Stork v. United States, No 15-2687, slip op. at 1 (7th Cir. Aug. 13, 2015)) -- that is, because Johnson is retroactive as applied to the ACCA Residual Clause, it is also retroactive as applied to the Guidelines' Residual Clause, see id. at 3-8.

As discussed supra, the Court rejects Ramirez's categorical approach to defining the rule at issue here.  In other words, the rule with which the Court deals here is not Johnson itself, but rather Johnson as applied to the Guidelines' Residual Clause.  Accordingly, that Johnson was held to be substantive and thus retroactive, see Welch, 136 S.Ct. at 1265, does not resolve the inquiry; in order for Ramirez to benefit from retroactivity here, the invalidation of the Guidelines' Residual Clause, pursuant to Johnson, must be substantive.  The Court holds that it is.[16]

---

courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process," Gall, 552 U.S. at 50 n.6 (emphasis added)).  Under that standard, a non-constitutional error in calculating a sentence that is not unlawful (not "without, or in excess of, statutory authority") is not cognizable under Section 2255.  Sun Bear, 644 F.3d at 705.  Ramirez's constitutional claims are a separate category of claims cognizable under Section 2255 and are not subject to the miscarriage of justice standard of review.  28 U.S.C. § 2255.

[16] The Court is aware that district courts outside of the First Circuit have reached different conclusions on this question.  Indeed, a number of district courts have held this rule to be procedural and non-retroactive.  See Cummings v.

Under the Guidelines, the basis for a defendant's
sentencing range is provided by two variables: the offense level
and the criminal history category.  United States v. Serrano-
Mercado, 784 F.3d 838, 839.  The criminal history category
ranges from Category I to Category VI; the higher the category,
the higher the sentence.  Id.  A career offender is assigned
Category VI, the highest possible range, id., in keeping with
Congress's mandate to the United States Sentencing Commission
that "the [G]uidelines specify a sentence to a term of
imprisonment at or near the maximum term authorized" for career
offenders.  28 U.S.C. § 994(h).  A career offender designation

---

United States, No. 15-CV-1219-JPS, 2016 WL 799267 (E.D. Wis.
Feb. 29, 2016); United States v. Stork, No. 3:10-CR-132, 2015 WL
8056023 (N.D. Ind. Dec. 4, 2015); Frazier v. United States, No.
109CR188CLCSKL1, 2016 WL 885082, at *5 (E.D. Tenn. Mar. 8, 2016)
("Unlike the ACCA -- a statute that shifts the defendant's
penalty range and minimum and maximum terms of imprisonment --
the Guidelines merely guide the execution of a court's
discretion in selecting the appropriate sentence from within an
otherwise stagnate range of lawful penalties."); Hallman v.
United States, No. 3:15-CV-00468-MOC, 2016 WL 593817, at *5
(W.D.N.C. Feb. 12, 2016) (holding the rule to be procedural
because, according to Peugh, the failure to correct a Guidelines
error is a procedural error); United States v. Willoughby, No.
3:10 CR 431, 2015 WL 7306338, at *7 (N.D. Ohio Nov. 18, 2015)
("Because the Sentencing Guidelines must always fit within the
limits set by Congress, an erroneous career-offender designation
carries no risk that a defendant faces a punishment that the law
cannot impose upon him.") (internal quotation marks and citation
omitted).  But see United States v. Dean, No. 3:13-CR-00137-SI,
2016 WL 1060229, at *16 (D. Or. Mar. 15, 2016) (holding that
Ninth Circuit precedent mandated a categorical retroactive
application of Johnson to the Guidelines' Residual Clause).

may also increase an offender's offense level.  U.S.S.G. §
4B1.1(b).  The offense level and the criminal history category
provide an initial suggested sentencing range.  Serrano-Mercado,
784 F.3d at 839.

     Before embarking on the "advisory" component of sentencing
under the Guidelines -- the consideration of the 18 U.S.C. §
3553(a) factors (the majority of which are related to the
primary offense and not the offender's criminal history) and
other variations -- the judge already views the defendant
through "career offender-tinted glasses" with a baseline
sentencing range "multitudes" higher than otherwise.  Hawkins v.
United States, 706 F.3d 820, 827 (7th Cir.) (Rowan J.,
dissenting), opinion supplemented on denial of reh'g, 724 F.3d
915 (7th Cir. 2013).  Moreover, empirical data shows that even
after a judge exercises her discretion to deviate from the
initially suggested sentencing range, the differential between
the sentences with and the sentences without the career-offender
designation persists, as a result of the Guidelines' continuing
"gravitational pull," Hawkins, 706 F.3d at 824, resulting from
procedural hurdles that "make the imposition of a non-Guidelines
sentence less likely[,]" Peugh, 133 S.Ct. at 2083-84;  see
supra Section II.A.  Year after year following Booker, the vast
majority of sentences imposed by federal district courts fell
within or below the Guidelines.  See U.S.S.C., Sourcebook of

[22]

Federal Sentencing Statistics FY 2007 to FY 2014, Table N
(approximately fifty percent of sentences are within the
Guidelines).  In fact, only two percent or fewer of the
sentences imposed constituted upward departures in every year
since Booker.[17]  Id.  The numbers are fairly consistent among
circuits.  Id.  Table N-1 to N-11.

The numbers confirm that, in practice, the upper limit of a
Guidelines range acts as a ceiling for the vast majority of
sentences imposed by federal district court judges, making a
career-offender designation the equivalent of an increase in a
statutory maximum.[18]  See United States v. Gurley, 860 F.Supp.2d

---

[17] The percentage of upward departures varies by type of
primary offense, with more serious offenses such as manslaughter
or arson subject to upward departure at a higher rate; drug
offenses receive upward departures in less than one percent of
cases.  U.S.S.C., Sourcebook of Federal Sentencing Statistics FY
2014, Table 32.

[18] This Court's sentencing practice makes the Guidelines
central to its sentencing decision and does not differ from the
practice of other federal district courts in this country.
Invariably, the Court follows the same four steps in sentencing
a defendant, which it announces at a defendant's sentencing
hearing prior to making the ultimate determination:

This is a sentencing that proceeds under 18 United States
Code, Section 3553(a).  Sentencing in this session of
the Court proceeds in four steps.  The first step is to
calculate the highest sentence that is permissible under
the constitution.  The second step is to look at the
average sentences that have been imposed for crimes of
this sort.  I do not sentence from any average, but I
look at the averages to inform me as to the weight to be
given to the advisory sentencing guidelines.  Third, the
Court must accurately calculate the advisory sentencing

95, 116 (D. Mass. 2012) (this Court sentenced the defendant to the high end of the applicable Guidelines range); see also United States v. Kandirakis, 441 F.Supp.2d 282, 335-336 (D. Mass. 2006) (sentence within the Guidelines range).[19]  Although judges may depart downward more substantially when sentencing career offenders, see Spencer v. United States, 773 F.3d 1132, 1142 (11th Cir. 2014) (en banc), the differential between the unenhanced sentence and the enhanced one remains significant, at

---

guidelines.  Those three steps are largely arithmetic. If counsel would differ with any of the calculations that the Court uses please interrupt me and I will try to resolve the matter.

That done, we turn to the fourth and most important step, and that is to fashion a fair and a just sentence for Mr. Ramirez having in mind the needs of society and his particular circumstances.

Now, I calculate the highest constitutionally permissible sentence by looking, without any mitigating factors at all, to the top of the sentencing guideline matrix that would apply.  To go any higher than that would, it seems to me, in our quasi-determinant system of sentencing be a unprincipled departure.

Tr. Disposition Rigoberto Ramirez 6:18-7:16.

[19] As the decisions in Kandirakis and Gurley make clear, since Booker this Court never would have sentenced Ramirez to 12 years in prison had it not been for his erroneous career offender designation.  At most, his sentence would have been 63 months.  See 2011 Federal Sentencing Guidelines Manual – Sentencing Table, http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2011/manual-pdf/Sentencing_Table.pdf; PSR 11, 29; Tr. Disposition Rigoberto Ramirez 7:11-16, 8:25-9:2.

an annual average of 100 months even after accounting for all

the "advisory" steps that influence the ultimate sentence.[20]  See

supra Section II.A.  In this case, in the absence of the career-

offender designation, Ramirez's sentencing would have been based

on a sentencing range of 37 to 46 months.  See supra Section

I.A.  With the career-offender designation, that jumps to a

range of 151 to 188 months.  Id.

That some -- realistically, few -- offenders would receive

the same sentence, with or without the career offender

classification, does not undermine the substantive character of

---

[20] This differential between the sentencing range suggested
by the Guidelines with and without the career offender
designation is what distinguishes Ramirez's case from the
related question of whether the rule of Peugh -- that applying
to a defendant an upwardly shifted sentencing range that was
promulgated after the defendant committed his criminal acts
violates the Ex Post Facto Clause, Peugh, 133 S.Ct. at 2075-76,
-- is retroactive, which some courts of appeal have answered in
the negative,  see, e.g., Conrad v. United States, 815 F.3d 324,
326, 328 (7th Cir. 2016) (holding that a petitioner requesting
the retroactive application of Peugh is not entitled to relief
because "the concern with overburdening the courts with
postconviction litigation has controlling weight" since the
upward shift in the advisory Guidelines sentencing range does
not result in "a punishment that the law cannot impose upon [the
petitioner]" (quoting Schriro, 542 U.S. at 352)).  A designation
as criminal offender under the Guidelines' Residual Clause also
shifts the sentencing range in the same direction, upward; but
given the magnitude of the shift and its virtually certain
impact on the actual length of time that a defendant is sent to
prison for, Johnson, as applied to the Guidelines, fits more
within the category of substantive rules with procedural
components, see Montgomery, 136 S.Ct. at 734-735, than in that
of procedural rules with "substantive effects," see Conrad, 815
F.3d at 327.

the rule at issue here.  Cf. Montgomery, 136 S.Ct. at 734

(holding that Miller v. Alabama, 132 S.Ct. 2455 (2012),

announced a substantive rule).  In Miller, the Supreme Court

held that juveniles convicted of homicide could not be sentenced

to life in prison without parole absent consideration of the

juvenile's special circumstances.  132 S.Ct. at 2469.  Several

years later, in Montgomery, the Supreme Court held that the

Miller rule was retroactive even though the rule did not

categorically bar life without parole for juveniles, because it

"carr[ies] a significant risk that . . . the vast majority of

juvenile offenders . . . face[] a punishment that the law cannot

impose on [them]."  136 S.Ct. at 734 (citation omitted).

According to the Supreme Court, it sufficed that Miller

"bar[red] life without parole . . . for all but the rarest of

juvenile offenders."  Id.[21]  Similarly, here, an offender

_____

[21] The Supreme Court in Montgomery explains, in terms eerily
relevant to the context here,that:

> Miller, it is true, did not bar a punishment for all
> juvenile offenders, as the Court did in Roper or Graham.
> Miller did bar life without parole, however, for all but
> the rarest of juvenile offenders, those whose crimes
> reflect permanent incorrigibility. For that reason,
> Miller is no less substantive than are Roper and Graham.
> Before Miller, every juvenile convicted of a homicide
> offense could be sentenced to life without parole. After
> Miller, it will be the rare juvenile offender who can
> receive that same sentence.

136 S.Ct. at 734.

designated as career offender under the Guidelines' Residual Clause would be subject to a sentence multiple times higher than in the absence of the designation in the vast majority of cases.[22]

Given the impact of a career offender designation on a defendant's sentence, if a court were to refuse retroactively to apply the invalidation of the Guidelines' Residual Clause, the risk that a defendant received a sentence that otherwise he would not have received is more than "likely to rise," Conrad v. United States, 815 F.3d 324, 327 (7th Cir. 2016).  Rather, the court's decision would carry the "impermissibly large risk," Teague, 489 U.S. at 312, that the punishment exceeds what the defendant would have received without the designation.  This risk trumps finality in the Teague framework.[23]  See Teague, 489

---

[22] The government attempts to distinguish Montgomery from this case by arguing that the rule of Miller was retroactive because it allowed the sentencing judge to consider a broader, more lenient range of sentence than it could have before. Gov't.'s Opp'n 17.  According to the government, the Montgomery rationale would not apply to the rule here because a federal judge always had the option to consider the same range of sentences, with or without the invalidation of the Guidelines' Residual Clause.  Id.  As discussed, arguing that the invalidation of the Guidelines' Residual Clause does not change the magnitude of a defendant's sentence falls flat in the face of existing empirical evidence and of the procedural hurdles cabining a judge's discretion.

[23] This risk, backed by empirical data, also mutes an argument common among the district court opinions reaching the opposite retroactivity conclusion and also present in the government's brief, that since not applying Johnson to the

U.S. at 307-308, 312.   Accordingly, the invalidation of the

Guidelines' Residual Clause pursuant to Johnson constitutes a

substantive rule that must apply retroactively.[24]

_____

Guidelines retroactively does not result in "a punishment that
the law cannot impose upon [the offender]," Schriro, 542 U.S. at
352, the new rule here cannot be a substantive rule.   See, e.g.,
Willoughby, No. 3:10 CR 431, 2015 WL 7306338, at *7; Gov't's
Opp'n. 13; see also Conrad, 815 F.3d at 328 (making the same
argument when discussing the retroactivity of Peugh).   As
discussed before, the category of substantive rules is not so
narrowly limited as to require an impact on one hundred percent
of a class of offenders in order to have a new rule
retroactively applied; the question of retroactivity is framed
as an issue of "risk."   Teague, 489 U.S. at 312.   Substantive
rules "alter[] the range of conduct or the class of persons that
the law punishes."   Schriro, 542 U.S. at 352.   So does a rule
declaring the Guidelines' Residual Clause unconstitutionally
vague: it alters the class of persons subject to career
offender-enhanced sentences.   This class no longer includes
individuals whose past offenses are crimes of violence solely as
a result of the Guidelines' Residual Clause.

     [24] The Court rejects the government's argument that the rule
at issue here must be procedural because the Supreme Court in
Peugh declared that errors in calculating a defendant's advisory
Guidelines range as "procedural," rather than substantive, and
thus, non-retroactive.   Gov't.'s Opp'n 16-17; see Peugh, 133
S.Ct. at 2083 ("Failing to calculate the correct Guidelines
range constitutes procedural error.") (citing Gall, 128 S.Ct. at
597).   Both Peugh and Gall, the case on which the Peugh Court
relies in its discussion of procedural and substantive rules,
employ the terms substantive and procedural in a context
unrelated to Teague retroactivity.   See Peugh, 133 S.Ct. at 2083
(discussing procedural errors as relevant to the standard and
scope of appellate review); Gall, 128 S.Ct. at 597 (same).
Indeed, in Gall, the Supreme Court uses the term "substantive"
as a measure of whether, for the purpose of appellate review, a
district court's sentence is reasonable or appropriate.   See 128
S.Ct. at 597.   As these uses of the terms "procedural" and
"substantive" are unrelated to concerns about the risk of
condemning an innocent individual or sentencing a defendant to
an improper punishment, see Teague, 133 S.Ct. at 2083, they do
not control this Court's analysis under Teague.   Cf., e.g., Sun

[28]

**III. CONCLUSION**

It follows from the foregoing analysis that the rule announced in this case - that the Guidelines' Residual Clause is unconstitutionally vague and is retroactively applicable to Ramirez, entitles him to the relief provided by Section 2255. Accordingly, the Court granted Ramirez's Section 2255 petition to vacate, set aside, or correct his sentence.  Elec. Clerk's Notes, ECF No. 137.


                                        /s/ William G. Young
                                        WILLIAM G. YOUNG
                                        U.S. DISTRICT JUDGE

---

Oil Co. v. Wortman, 486 U.S. 717, 726, 108 S.Ct. 2117, 2124 (1988)("substantive" may mean different things in different contexts: it has a different meaning under the Erie doctrine as opposed to its purpose for the conflict of laws).